## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT VEAL, | § | |
|      Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-3550 |
| | § | |
| SCHLUMBERGER TECHNOLOGY | § | |
| CORPORATION, *et al.*, | § | |
|      Defendants. | § | |

## MEMORANDUM AND ORDER

This employment discrimination case is before the Court on the Motion for Summary Judgment [Doc. # 24] ("Motion") filed by Defendants Schlumberger Technology Corporation and Schlumberger Limited (Schlumberger N.V.) (collectively, "Schlumberger"),[1] to which Plaintiff Robert Veal ("Veal") filed his Response [Doc. # 27] and Schlumberger filed a Reply [Doc. # 28]. Based on a careful review of the full record in this case and the governing legal authorities, the Court concludes that Schlumberger's motion should be **granted**.

---

[1] Schlumberger notes that Veal has not established Defendant Schlumberger Limited (Schlumberger N.V.) was his employer. Schlumberger Limited (Schlumberger N.V.) has not moved for summary judgment on this ground. Schlumberger filed the Motion and Reply on behalf of both entities. *See* Motion, at 1 n.1; Reply, at 1 n.1. Therefore, the Court does not reach this issue.

## I.   __BACKGROUND__

Veal, an African-American, began working for Schlumberger as a laboratory technician in New Orleans on July 1, 2000.  In May 2001, Veal inquired about transferring to a Service Supervisor Trainee ("SST") position.  Ronnie Justice ("Justice"), a Caucasian, is Schlumberger's operations manager in Bryan, Texas.  Justice knew Veal was an African-American when he approved Veal's transfer to Schlumberger's Bryan facility.  On July 16, 2001, Veal transferred to Bryan as an SST and reported to Justice.

Veal trained in Bryan as a SST from July 16, 2001, until he left to attend a five-week STEP 1 cementing course ("the STEP 1 course") at Schlumberger's Kellyville Training Center ("KTC") in Oklahoma on February 12, 2002.  SSTs must successfully complete the STEP 1 course, among other requirements, before advancing to the Service Supervisor 1 position ("SS1 position").  Veal failed a cement pumping test during his first week of the STEP 1 course.  Pursuant to KTC procedures, Schlumberger gave Veal a written warning informing him that any other failure would lead to his dismissal from the STEP 1 course. During the second week of the course, Veal failed a written examination covering classroom training.  Schlumberger dismissed him from the STEP 1 course on February 25, 2002.

After Veal's failure, Schlumberger informed him that he would not be given another opportunity to complete the STEP 1 course.  Justice placed Veal in a laboratory technician position at the Bryan facility.  Veal alleges that this reassignment was a demotion and further complains that he was harassed by a co-worker at the Bryan facility from April 2, 2003, until he resigned on November 4, 2003.

Veal filed a race discrimination, disability discrimination, and retaliation complaint with the Equal Employment Opportunity Commission ("EEOC") on March 9, 2004. On June 15, 2004, the EEOC issued Veal a right to sue letter. Veal filed this suit on September 10, 2004 alleging race discrimination in violation of Title VII and 42 U.S.C. § 1981.

The facts specific to Veal's respective claims will be set forth fully as necessary for the analysis in this Memorandum and Order.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). An issue is material if its resolution could affect the outcome of the action.

*Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).   In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).   However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial.  *Smith  v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998).   The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial."[2]  *Id.*  If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275,

---

[2]    "When a party moves for summary judgment, . . . '[i]t is not enough for the moving party to merely make a conclusory statement that the other party has no evidence to prove his case.'" *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 440 (5th Cir. 2000) (citing *Ashe v. Corley,* 992 F.2d 540, 543 (5th Cir.1993)).  "[B]efore the non-moving party is required to produce evidence in opposition to the motion, the moving party must first satisfy its obligation of demonstrating that there are no factual issues warranting trial." *Id.* (internal quotations and citations omitted).  "Indeed, where a motion for summary judgment is solely based on the pleadings or only challenges the sufficiency of the plaintiff's pleadings, then such a motion should be evaluated in much the same way as a Rule 12(b)(6) motion to dismiss." *Id.* (citation omitted).

282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1998)).

A dispute over a material fact is genuine if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party. *Id.* (quoting *Brenoettsky*, 158 F.3d at 911); *see also*

*Quorum Health Resources, L.L.C. v. Maverick County Hosp. District*, 308 F.3d 451, 458

(5th Cir. 2002).

The nonmovant's burden is not met by mere reliance on the allegations or denials in

the nonmovant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531,

545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary

judgment evidence (quoting *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir.

1994))).  Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not

meet this burden. *Morris v. Covan World Wide Moving, Inc.*,  144 F.3d 377, 380 (5th Cir.

1998).  Instead, the nonmoving party must present specific facts which show "the existence

of a 'genuine' issue concerning every essential component of its case." *Id.*  In the absence

of any proof, the court will not assume that the nonmovant could or would prove the

necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant

fails even to refer to it in the response to the motion for summary judgment, that evidence

is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.

2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998);

*Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992)).  "Rule 56 does not

impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

## III.  ANALYSIS

Veal claims that Schlumberger discriminated against him in a number of ways in violation of Title VII and § 1981.  Specifically, Veal alleges he was (1) denied a promotion, (2) denied training, (3) demoted, (4) harassed, and (5) constructively discharged because of his race.

### A.  General Standards for Discrimination Claims

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[3]   42 U.S.C.  § 2000e–2(a)(1). "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green.*"  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000); *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).  "Direct evidence is

---

[3]      Veal brings his discrimination claims under both Title VII and § 1981.  The analysis under both statutes is identical.  *See, e.g., Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002).  The only substantive differences between the two statutes are the applicable statutes of limitations and Title VII's requirement that an employee exhaust administrative remedies.  *See Jones*, 427 F.3d at 992; *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 351 (5th Cir. 2001).

evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (internal citations and quotations omitted).[4]   Where there is no direct evidence of discrimination, the plaintiff must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination.  *See Russell*, 235 F.3d at 222.  To establish a *prima facie* case of intentional race discrimination, the plaintiff must show: (1) he is a member of a protected group; (2) he was qualified for the position he held or for which he applied; (3) he suffered an adverse employment action; and (4) he was replaced with a person outside of the protected class, or the adverse employment action was due to plaintiff's membership in the protected class.  *See Reeves*, 530 U.S. at 142.

If established, a *prima facie* case raises an inference of discrimination, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse decision."  *Patel v. Midland Memorial Hosp. & Med. Center*, 298 F.3d 333, 342 (5th Cir. 2002). "If the defendant presents such a reason, then the inference disappears, and the plaintiff must offer evidence that the proffered reason is a pretext for . . . discrimination."[5]

---

[4]   Veal does not maintain there is direct evidence of discrimination.

[5]   A separate framework for "mixed-motive" discrimination claims was established in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), and is now codified in Title VII at 42 U.S.C. § 2000e-2(m).  Neither Veal nor Schlumberger raises the mixed-motive issue.

*Id.; see Laxton*, 333 F.3d at 578; *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001).

"An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578 (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)). "Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's *prima facie* case, is likely to support an inference of discrimination without further evidence of defendant's true motive." *Id.* (citing *Sandstad*, 309 F.3d at 897). "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Reeves*, 530 U.S. at 147. "The ultimate determination, in every case, is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable fact finder could infer discrimination." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). "Whether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case that properly may be considered' by a court when ruling on a motion for summary judgment." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148–49).

The Fifth Circuit has noted that a "plaintiff's conclusory assertions of less favorable treatment, absent specific examples, were insufficient to establish discrimination." *Wallace*

*v. Methodist Hosp. System*, 271 F.3d 212, 225 (5th Cir. 2001) (citing *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1186 (5th Cir. 1997)); *see  Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998) (a plaintiff's vague or conclusory allegations of discrimination or harassment are insufficient to survive summary judgment). *Douglas v. United Svcs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).

### B.      Timeliness of Veal's Discrimination Claims

Schlumberger argues that Veal's claims based on events occurring before May 13, 2003, are time-barred.  The Court agrees that some of Veal's claims are time-barred under Title VII.  However, Veal may nonetheless proceed on claims arising from the pre-May 13, 2003 events under § 1981, which employs a distinct statute of limitations.

Veal filed a charge of discrimination with the EEOC on March 9, 2004.  Under 42 U.S.C. § 2000e-5(e)(1), claimants in Texas must file a charge of discrimination with the EEOC within 300 days after the alleged unlawful employment practice occurred.  *Huckabay,* 142 F.3d at 238.  Therefore, Veal's Title VII claims based on events before May 13, 2003 are time-barred.  *See id.*  Specifically, Veal's claims that he was denied training in late 2001 and early 2002, that he was not promoted to the SS1 position after failing the STEP 1 course in February 2002, and that he was demoted in April 2002 are untimely under Title VII.  *See id.*  Veal's hostile work environment claims based on events before May 13, 2003, similarly are time-barred under Title VII.

Veal correctly argues, however, that Title VII's limitations period has no bearing on claims brought under § 1981. Section 1981 employment discrimination claims that are based

on conduct occurring after and apart from the formation of a contract have a four-year statute of limitations. *See Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th Cir. 2005). None of the events Veal complains of fall outside § 1981's limitations period. Consequently, Veal may proceed under § 1981 on the claims that are time-barred under Title VII.

### C.    Failure to Promote Claim

Veal alleges that he was denied a promotion from the SST position to the SS1 position because of his race. Schlumberger contends this claim fails because Veal cannot establish a *prima facie* case since Veal was not qualified for the SS1 position. Alternatively, Schlumberger contends it has articulated a legitimate, nondiscriminatory reason for not advancing Veal to the SS1 position, and Veal has not presented evidence that Schlumberger's reason is pretext for discrimination. Veal argues that genuine issues of material fact concerning the *prima facie* case and proof of pretext exist.

A *prima facie* case based on failure to promote is established by a showing that: (1) plaintiff is a member of a protected class; (2) he sought and was qualified for the position; (3) he was rejected for the position; and (4) the position was filled by someone outside the protected class or the employer continued to seek applicants with plaintiff's qualifications. *Medina*, 238 F.3d at 680–81; *Haynes v. Pennzoil Co.*, 207 F.3d 296, 300 (5th Cir. 2000).

Schlumberger argues that Veal cannot establish a *prima facie* failure to promote discrimination claim because Veal was not qualified for the SS1 position. Schlumberger explains that Veal did not complete the STEP 1 course, a necessary qualification for the SS1

position.[6]  The evidence is undisputed that SSTs must pass the STEP 1 course, among other criteria, before advancing to the SS1 position.  Because Veal did not satisfy the STEP 1 criterion, he was not qualified for the SS1 position.  He thus has not stated a *prima facie* case that he was denied a promotion because of his race.  *See Medina*, 238 F.3d at 680–81; *Haynes*, 207 F.3d at 300.

Veal argues that a written comment from KTC instructor Carl Johnson establishes that completion of the STEP 1 course is not an immutable prerequisite for the SS1 position.  Veal cites to this comment:

> Robert received his second warning (release) letter in the 3rd week resulting in him being sent back to his location from KTC.

> He would now need to continue his preparation for the next STEP 1 C course and enroll on [*sic*] the course when he is suitably prepared.[7]

Veal's argument is rejected.  At most the instructor's comment suggests that Schlumberger provides employees who fail the STEP 1 course a second chance to take the course if and when they are suitably prepared to attempt the course.  The comment does not establish that Veal was qualified for the SS1 position without completing that training.  Veal has not cited to any facts supporting his position that Johnson's comment somehow renders

---

[6]     Veal was ticketed for an accident he was involved in while driving a large cement truck on October 21, 2001, while training as an SST.  Schlumberger also contends that Veal's inability to safely drive the cement truck rendered him unqualified for the SS1 position.  Veal has shown a fact issue as to this explanation by Schlumberger.  The accident occurred several months before Veal attended the STEP 1 course and yet Schlumberger admitted Veal into the STEP 1 training, indicating the accident was not a true impediment to the SS1 position.

[7]     Veal's KTC Transcript dated March 26, 2002, Exhibit 6 to Response.

him qualified for the SS1 position and he thus fails to show proof of a *prima facie* case of promotion discrimination on the basis of his race.

Assuming for the sake of argument that Veal has established a *prima facie* case of discrimination based on Schlumberger's failure to promote him to SS1, the burden shifts to Schlumberger to provide a legitimate, nondiscriminatory reason for its decision. *See, e.g., Laxton*, 333 F.3d at 578. As its legitimate, nondiscriminatory reason for not promoting Veal to the SS1 position, Schlumberger maintains Veal was not eligible for advancement because he did not successfully complete the STEP 1 course.

Veal concedes Schlumberger has articulated a legitimate, nondiscriminatory reason for its decision, but replies Schlumberger's stated reason is false. Veal cites to Carl Johnson's statement suggesting Veal could return for the STEP 1 course and claims David Johnson, a Caucasian allegedly similarly-situated to Veal, was treated more favorably in that regard. In support, Veal merely states in his Response that "it strains credulity to believe that Defendants would have allowed [David] Johnson to remain at the Bryan location for approximately two months after he failed the KTC if they were going to fire him because of his failure at KTC."[8] Veal reasons that he received less favorable treatment than Johnson because Veal was immediately demoted to the Bryan laboratory upon his failure of the STEP 1 course.

---

[8]      Response, ¶ 39.

Veal's reliance on Carl Johnson's statement is misplaced. The statement does not support Veal's proposition that Schlumberger in fact provided other failing SSTs the right to remain in the same job while attempting to prepare for a future STEP 1 course. Nor does the statement confer any automatic right to re-training. The instructor's statement instead expresses that Veal would need to suitably prepare for the STEP 1 course prior to having the option to re-enroll. In any event, Veal has not produced evidence of a single SST that Schlumberger permitted to re-enroll in the STEP 1 course after an initial failure. David Johnson, Veal's suggested comparator, was not permitted to re-enroll in the STEP 1 course, nor was he advanced to the SS1 position after his failing the course he attempted. Importantly, there is no evidence Schlumberger permitted a single SST of any race who failed the STEP 1 course to re-enroll or to advance to the SS1 position.[9] Additionally, when asked in his deposition whether he believed he was not given the opportunity to return to KTC because of his race, Veal stated "I don't have any proof of that."[10] Veal is simply unable to show an employee of another race was treated more favorably by being permitted to re-enroll in the STEP 1 course or advance to the SS1 position without first satisfying that requirement, as well as the other stated criteria. Veal therefore has not shown that Schlumberger's prerequisites for promotion are a pretext for discrimination.

---

[9]     Justice stated in his affidavit that he is not aware of any employee who was given a second chance to complete the STEP 1 course. Affidavit of Ronnie Justice ("Justice Affidavit"), Exhibit 3 to Motion, ¶ 11.

[10]     Excerpts from Deposition of Robert Veal, Exhibit 1 to Reply, at 132.

Veal thus has failed to raise a genuine issue of material fact that he was denied a promotion because of his race. Schlumberger is entitled to summary judgment on this claim.

**D.     Denial of Training Claim**

Veal also alleges Schlumberger denied him training because of his race. Specifically, Veal argues that, upon arriving in Bryan as an SST on July 16, 2001, he should have received a laptop computer, training software, an administrative password to access the training software after hours, and a mentor.[11]  Veal argues these training tools were necessary to prepare for the STEP 1 course. In fact, Veal was given access to the training modules on November 6, 2001. He received the laptop and the administrative password on February 10, 2002. The STEP 1 course began on February 12, 2002.

Veal alleges that Schlumberger treated a similarly situated Caucasian employee— again, David Johnson—more favorably with respect to access to training tools and training opportunities. Johnson received his administrative password and laptop one month prior to commencing the STEP 1 course, and thus, had unlimited pre-course access to training modules for a month.  Veal had unlimited access for only two days prior to the commencement of the STEP 1 course.

Veal also complains that his assigned mentor, Roger Walker, a Caucasian, did not advise or otherwise mentor him, but that Walker mentored Dan Mack, a Caucasian Field Service Manager, on two occasions.

---

[11]     Veal also states he was to receive an email address and dial-up internet access with his laptop. It is not clear from the record if he received these tools.

Schlumberger first contends Veal cannot establish a *prima facie* case of discrimination based on the denial of tools or training opportunities because such denials do not constitute an adverse employment action. Alternatively, Schlumberger contends summary judgment is appropriate because it has articulated a legitimate, nondiscriminatory reasons for its training decisions and Veal has not presented evidence that the company's reasons are pretext. Veal disputes many of Schlumberger's factual assertions and argues that he meets summary judgment burden at both steps of the analysis.

To establish a *prima facie* case based on a disparate treatment claim, Veal must present evidence that (1) he belongs to a protected class, (2) he is qualified for the position in issue, (3) he suffered an adverse employment action, and (4) others outside the class who were similarly situated were treated more favorably than he. *See Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (citing *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001)).

"Title VII was only designed to address '*ultimate* employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.'" *Burger v. Central Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999) (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.), *cert. denied*, 522 U.S. 932 (1997)). The Fifth Circuit holds that "an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). Actionable adverse employment actions are generally limited to "tangible employment action[s] [that]

constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see Banks*, 320 F.3d at 575; *Mattern*, 104 F.3d at 707. An ultimate employment decision, in itself or through its direct consequences, must effect a material change in the terms or conditions of employment. *See Burger*, 168 F.3d at 879. According to the Fifth Circuit, interlocutory or mediate decisions, even those that can lead to an ultimate employment decision, are not adverse employment actions for purposes of the employment discrimination statutes.[12] *See Mattern*, 104 F.3d at 708.

The parties dispute whether denial of training is an adverse employment action. In *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398 (5th Cir. 1999), the Fifth Circuit addressed a denial of training discrimination claim. The plaintiff had alleged that her employer refused to train her on some specialized filing software because of her race. *Id.* at 406. In granting summary judgment for defendant, the district court found that a denial of training was not an adverse employment action under Title VII. *Shackelford v. Deloitte & Touche, LLP*, 1998 WL 345545, at *6 (N.D. Tex. June 24, 1998). In reaching its decision, the district court relied on the Fifth Circuit's holding in *Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995). *See id.* In *Dollis*, a retaliation claim, the Fifth Circuit held that an employer's refusal

---

[12]    As discussed below, the Fifth Circuit applies the same definition to an adverse employment action under Title VII regardless of whether the claim is for discrimination or retaliation.

to allow an employee to attend a training conference was not an adverse employment action. 77 F.3d at 779, 782.

On appeal, the plaintiff argued that the "ultimate employment decision" standard, as outlined in retaliation cases like *Dollis*, did not apply to her race discrimination claim.  The plaintiff instead advocated that her discriminatory failure to train claim should be held to a lesser adverse action standard because Title VII discrimination claims were intended to reach activities that "tend to adversely affect" the employee, while retaliation claims were intended to reach only ultimate employment decisions.  *Shackelford*, 190 F.3d 398, 406.  The Fifth Circuit affirmed the district court's result because there was no evidence that plaintiff's denial of training on specialized filing software "tended to affect" plaintiff's employment status because her position only required her to use the software to fulfill backup duties.  *Id.* at 407.

The court in *Shackelford* did not adopt the loose "tend to affect" test plaintiff advocated for discrimination claims.  The Court of Appeals instead held that, even assuming plaintiff's more liberal test applied, the denial of training under the circumstances before that court did not constitute an adverse employment action.  *See id.*  In subsequent cases, the Fifth Circuit has stated that the same "ultimate employment decision" standard applies to both discrimination and retaliation claims.  *See, e.g., Hernandez v. Crawford Bldg. Material*, 321 F.3d 528, 531–32 (5th Cir. 2003) (per curiam) (explaining that the definition of ultimate employment actions in retaliation cases is derived from the definition of discrimination in disparate treatment cases); *Washington v. Veneman*, 109 Fed. Appx. 685, 689 (5th Cir. 2004)

("We have consistently held that in order to present a *prima facie* case for either disparate treatment or retaliation, a plaintiff must show that the employer took an 'adverse employment action'. . . . In this circuit, only 'ultimate employment decisions' qualify as the adverse employment actions necessary to establish a *prima facie* case of discrimination or retaliation."); *Clayton v. Rumsfeld*, 106 Fed. Appx. 268, 270 (5th Cir. 2004) (holding that the adverse employment action requirement is the same for both discrimination and retaliation claims); *see also Thompson v. Exxon Mobil Corp.*, 344 F. Supp. 2d 971, 980–81 (E.D. Tex. 2004) (Crone, J.) (finding that adverse employment action, in a disparate treatment or retaliation action, refers to ultimate employment decisions).

The Court is persuaded that this circuit's jurisprudence employs the same definition to an adverse employment action, regardless of whether the claim is for discrimination or retaliation.[13]  Veal has not cited, and the Court has not unearthed, a single Fifth Circuit opinion in which an employer's alleged failure to train was held to constitute an adverse employment action in a Title VII or § 1981 discrimination or retaliation claim. Consequently, Veal's denial of training claim fails because he has not shown an adverse employment action.  *See Shackelford*, 190 F.3d at 407; *Dollis*, 77 F.3d at 779, 782.

---

[13]     The Court has some reservation about the Court of Appeals' interpretation of Title VII, particularly in light of the language in Title VII prohibiting discrimination, as compared to that statute's language proscribing retaliation.  Nevertheless, this Court is bound to follow Fifth Circuit precedent.  In any event, Veal has not met his summary judgment burden to show discriminatory intent (circumstantially or otherwise) with respect to Schlumberger's training opportunities made available to him.

Even if the Court applied the standard articulated by the plaintiff in *Shackelford*, Veal's evidence would not satisfy his burden because the training at issue, while imperfect, did not "tend to affect" Veal's employment status. *See Shackelford*, 190 F.3d at 407. Before attending the STEP 1 course, an SST is required to complete and receive credits for ten training modules consisting of hands-on activities and computer assignments.[14] The SST also must pass an online examination administered by the KTC. *Id.* Veal mastered the modules and completed the examination despite the lack of a laptop and special password for any substantial period of time. When asked by Justice if he was prepared for the STEP 1 course, Veal responded that he was.[15] While it might have been preferable for Veal to have had earlier *unlimited* access to the training materials (which the laptop would have provided) and a more involved mentor, there is no evidence that the deficiencies in pre-STEP 1 training opportunities tended to affect Veal's employment status or his ability to succeed in the STEP 1 course. Veal was not denied training. *See Shackelford*, 190 F.3d at 407; *see also Roberson v. Game Stop/Babbage's*, 152 Fed. Appx. 356, 361 (5th Cir. 2005) (finding no adverse employment action under circumstances of plaintiff's denial of training claim).[16]

---

[14]     Justice Affidavit, ¶ 8.

[15]     *See* Excerpts from Deposition of Ronnie Justice, Exhibit 3 to Response, at 32.

[16]     Veal's argument regarding Walker's mentoring of Mack on two occasions does not salvage Veal's discrimination claim. As explained, failure to train, which is what mentoring amounts to, is not an actionable adverse employment action. Further, Veal concedes he has no evidence that Walker's failure to mentor him was racially motivated. *See* Excerpts from Deposition of Ronnie Veal ("Veal Deposition Excerpts (Motion)"), Exhibit 1 to Motion, at 260. Finally, for Veal to establish discrimination based on these events, he must establish that
(continued...)

Alternatively, assuming *arguendo* that Veal could establish a *prima facie* case of discrimination based on a failure to train, the burden would shift to Schlumberger to provide legitimate, nondiscriminatory explanation for its decisions. *See, e.g., Laxton*, 333 F.3d at 578. As noted, Schlumberger provided David Johnson a laptop and an associated administrative password one month before he attended the STEP 1 course, but gave Veal these tools only two days before his STEP 1 course began.[17] Schlumberger explains that the Bryan location had a limited supply of laptops and that they were assigned based on employees' seniority. Schlumberger also explains that Johnson was given priority because he was scheduled to attend the STEP 1 course in August 2001—approximately six months before Veal. According to its SST progression criteria, SSTs are expected to progress to the STEP 1 course in three to five months.[18] There is no evidence Veal was required to take the STEP 1 course when he did, if he felt unprepared. Therefore, Schlumberger has satisfied its burden of production by stating a legitimate, nondiscriminatory reason for its decisions relating to Veal's training. *See Laxton*, 333 F.3d at 578. Veal accordingly must establish

---

[16]   (...continued)
he and Mack were similarly situated in nearly identical circumstances. *See Krystek v. Univ. of So. Miss.*, 164 F.3d 251, 257 (5th Cir. 1999) (non-tenure track professor is not similarly situated to a tenure track professor); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir. 2001) (employees working in different capacities are not considered nearly identical). Mack was not similarly situated to Veal; Mack worked for Schlumberger in an entirely different capacity from Veal. *See id.*

[17]   Veal was provided access to the training modules in November 2001, the laptop and password merely provided additional after-hours access.

[18]   Justice Affidavit, ¶ 8. Veal had access to the training modules for more than three months. He trained as an SST for roughly seven months.

a genuine issue of material fact by demonstrating that Schlumberger's explanations are unworthy of credence.  *See id.*

To establish pretext, Veal argues that it was reasonable to assume that Justice's decision-making process was driven by racial motivation because Justice did not hire any African-American SSTs before Veal arrived nor after Veal failed the STEP 1 course.  Veal's argument is not meritorious.  First, the record does not establish that Justice hired *any* SSTs after Veal.  Veal also admits that Justice never said or did anything to make him believe that Justice treated him differently because of race.[19]  Second, Justice's decisions made business sense; distributing scarce computer training tools to employees with seniority and thus closer to attending the STEP 1 course was perfectly understandable.

Additionally, Justice knew Veal was an African-American when he approved Veal's transfer to Bryan as an SST and approved him for the STEP 1 course.  When the same individual makes the decisions to hire an employee and to later take an adverse action against the employee, an inference arises under the "same actor" doctrine that discrimination was not the employer's motive in taking the adverse action.  *See Faruki v. Parsons*, 123 F.3d 315, 320 n.3 (5th Cir. 1997) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996)).

---

[19]  Veal Deposition Excerpts (Motion), at 270.  Moreover, the evidence indicates Justice wanted Veal to pass the STEP 1 course.  STEP 1 training costs $7,000 and is charged against Justice's Bryan district.  Justice Affidavit, ¶ 9.  Justice needed a Service Supervisor and wanted to have the benefit of Veal's particular expertise to assist opening a new laboratory in Bryan.  *See id.*

Veal has presented no evidence that Schlumberger's articulated reasons for its decisions were false and thus a pretext for race discrimination.  Veal accordingly has failed to present evidence that raises a genuine issue of material fact that he was denied training because of his race.  Schlumberger is entitled to summary judgment on Veal's training denial discrimination claim.

### E.    Demotion Claim

Shortly after Veal failed the STEP 1 course, Justice transferred him from the SST position to a laboratory technician position at the Bryan facility.  As a result of this transfer, Veal's base pay was reduced by an unknown amount.  Veal claims that he was demoted because of his race.

To establish a *prima facie* case of demotion discrimination, a plaintiff must show that he was (1) a member of a protected class; (2) qualified for the position held at the time of demotion; (3) demoted despite his qualifications, and (4) that after the demotion, the job remained open, and applications were accepted.  *Evans v. City of Houston*, 246 F.3d 344, 350 (5th Cir. 2001) (internal citation omitted).  Schlumberger challenges the second and fourth elements of Veal's *prima facie* case.  However, because the summary judgment analysis on the pretext issues on this claim is far more straightforward, the Court will assume without deciding that Veal has established a *prima facie* of discrimination relating to his demotion.

Schlumberger argues that summary judgment is appropriate because it has articulated a legitimate, nondiscriminatory reason for demoting Veal and Veal has not presented

evidence that Schlumberger's reason is pretext.  Specifically, Schlumberger claims it transferred Veal to a laboratory technician position because the company needed someone to work in the Bryan lab and Veal, who had prior experience as a laboratory technician, was a logical candidate for the position.  As Veal concedes, Schlumberger has articulated a legitimate, nondiscriminatory reason for demoting him to the lab position.  Veal accordingly must establish a genuine issue of material fact by demonstrating that the company's explanation is unworthy of credence.

Veal has not met this burden.  He has not set forth any evidence to create a genuine issue of material fact that Schlumberger's stated reason for the demotion is untrue.  Indeed, Veal inexplicably fails to address Schlumberger's stated reason for his demotion.[20]  Veal admits that Justice never said or did anything to make him believe that Justice treated him differently because of his race.[21]  Veal also admits that Justice wanted him to work in the lab

---

[20]    Response, ¶¶ 44–45.  Veal instead attempts to introduce evidence of disparate treatment that has no bearing on Schlumberger's articulated reason for transferring Veal to the laboratory position.  Veal points to the fact that David Johnson, a Caucasian, was permitted to remain an SST for two months after failing the STEP 1 course before being terminated on other grounds.  Johnson's circumstances are irrelevant to Veal's demotion because Veal has not shown that Johnson was a similarly situated employee in nearly identical circumstances to Veal's.  See Krystek, 164 F.3d at 257.  Schlumberger has evidence that Veal's transfer to the Bryan laboratory was to satisfy a need for a laboratory technician at that location and Veal possessed the requisite experience.  Veal has not shown that Johnson had the requisite capabilities.  See id.  Employees with different capabilities are not considered to be "nearly identical."  See Okoye, 245 F.3d at 514–15.  Veal has completely failed to establish that he and Johnson were similarly situated under identical circumstances.

[21]    Veal Deposition Excerpts (Motion), at 270.

because of Veal's experience.[22]  Additionally, Justice knew Veal was an African-American when he approved Veal's transfer to Bryan as an SST and approved him for the STEP 1 course.  When the same individual makes the decisions to hire an employee and to later takes an adverse action against the employee, an inference arises under the "same actor" doctrine that discrimination was not the employer's motive in taking the adverse action.  *See Faruki*, 123 F.3d at 320 n.3 (citing  *Brown*, 82 F.3d at 658).

Veal has presented no evidence that Schlumberger's articulated reasons for its decision to transfer Veal to the Bryan laboratory was a pretext for race discrimination.  Veal accordingly has failed to present evidence that raises a genuine issue of material fact that he was demoted because of his race.  Schlumberger is entitled to summary judgment on Veal's demotion discrimination claim.

### F.    Hostile Work Environment (Harassment) Claim

Veal complains he experienced a racially hostile work environment[23] while working as a laboratory technician at Schlumberger's Bryan facility from April 2, 2002 through November 4, 2003.  Veal contends that a Caucasian co-worker, George Chambers, harassed him because of his race.[24]  For reasons explained hereafter, no genuine material fact issues exist to support Veal's hostile work environment claim.

---

[22]    Veal Deposition Excerpts (Motion), at 124.

[23]    The Court uses the phrase "hostile work environment" and the term "harassment" interchangeably.

[24]    Chambers was a contract employee who worked with Veal in the lab in Bryan.

As evidence in support of this claim, Veal cites to the following:

(1)      Chambers referred to Veal as "bra" on several unknown occasions;[25]

(2)      Chambers referred to Veal as a "H.N.I.C.," which according to Veal stands for "Head Nigger in Charge," once in June or July 2002;[26] and

(3)      Chambers challenged Veal to fist fights on two unspecified occasions.[27]

Chambers was Veal's co-worker, not a supervisor or supervisor to him at the lab. Veal does not allege that Justice or any other superior harassed him because of his race. To establish a *prima facie* case of racial harassment by a co-worker, a plaintiff must show that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment plaintiff complains of was based on his race; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *See Celestine*, 266 F.3d at 353 (citing *Watts*, 170 F.3d at 510).

Schlumberger contends Veal cannot establish the fourth prong of a *prima facie* case—that the harassment affected a term, condition or privilege of employment. *See id*. The Court agrees. The putative examples of hostile conduct, even when considered collectively, are insufficient to establish a *prima facie* case of a hostile work environment.

---

[25]      Response, ¶ 60 (citing Veal Deposition, at 174–76); *see also* Affidavit of Ronnie Veal ("Veal Affidavit"), Exhibit 4 to Response, ¶ 12.

[26]      Response, ¶ 60 (citing Veal Deposition Errata Sheet, at 342); *see also* Veal Affidavit, ¶ 12.

[27]      Response, ¶ 61 (citing Veal Deposition, at 265–68); *see also* Veal Affidavit, ¶ 12.

"For harassment to affect a 'term, condition, or privilege of employment' it must be 'sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'" *Id.* (quoting *Watts*, 170 F.3d at 509).

Veal first alleges that Chambers referred to Veal as "bra"[28] on several unknown occasions and "H.N.I.C.," which Veal contends stands for "Head Nigger in Charge," once in June or July 2002.   Several isolated incidents of an offensive slur, while rude and upsetting, are insufficient to affect the terms or condition of Veal's employment. *See Moore v. United Parcel Serv., Inc.*, 150 Fed. Appx. 315, 319 (5th Cir. 2005) (holding that several racial slurs by supervisors was insufficient to create a hostile work environment); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (A "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not sufficiently alter terms and conditions of employment to violate Title VII").

Veal also alleges that Chambers challenged him to fist fights on two unknown occasions.   However, Veal fails to supply any factual content to these threats or, more importantly, establish that the alleged threats were made because of Veal's race. *See Celestine*, 266 F.3d at 353 (noting that to establish *prima facie* case of harassment, a plaintiff must show he was harassed because of his race).   Veal's vague and conclusory allegations of harassment affecting a term or condition of employment are insufficient to meet his

---

[28]     The Court is not convinced that the term "bra" constitutes an offensive racial epithet, but will assume it does for purposes of this analysis.

summary judgment burden on the fourth element of this claim.[29]  *See Huckabay*, 142 F.3d at 241.

Schlumberger also contends that Veal has not established the fifth element of a *prima facie* case of co-worker harassment—that Schlumberger knew or should have known of the co-worker's harassment and failed to take remedial action.  Veal has responded, without citing any summary judgment evidence, that Schlumberger "knew or should have known [about] the kind of abuse Veal was suffering at the hands of Mr. Chambers, yet no appropriate remedial action was taken."[30]  This conclusory allegation is on its face insufficient to create a fact issue on his hostile work environment claim.  *See Huckabay*, 142 F.3d at 241.

This allegation also is not supported by a reference to summary judgment evidence.  Although "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment" and evidence not referred to in Veal's Response is not properly before the Court, *see Malacara*, 353 F.3d at 405, the Court nonetheless carefully has reviewed the summary judgment record for evidence that Schlumberger knew or should have known of a hostile work environment.  The

---

[29]    Furthermore, the record suggests that the workplace hostilities with Chambers may have little connection with Veal's race—Chambers started a rumor that Veal was romantically involved with a Caucasian male co-worker.  *See* Veal Deposition Excerpts (Motion), at 145.

[30]    Response, ¶ 62.

only potential support is in Veal's own affidavit accompanying his Response.[31]  Veal simply

states that he "reported this hostile work environment to both Jean Francis Leleu-Eponville,

[a Schlumberger Personnel Manager] and Barbara Keeling," who works in Schlumberger's

Compliance Department.   This statement is too vague and conclusory to be probative

evidence on Schlumberger's alleged "knowledge."  *See Huckabay*, 142 F.3d at 241.  There

is no indication what Veal said in his putative report(s) to either of these individuals.  Veal

testified in his deposition that he did not recall complaining to Leleu-Eponville of any racial

slurs.[32]  Significantly, Veal admitted in his interrogatory responses that he never reported

being referred to as "bra" or "H.N.I.C." to any supervisor or manager.[33]  There is no evidence

that Veal complained to anyone that Chambers had threatened him with physical violence.

Other specific evidence in the record suggests that Veal did not complain to Schlumberger

of Chamber's conduct.   Instead, the evidence reveals only that Veal complained that he

believed his phone and computer were being monitored by Schlumberger.   Veal also

complained that he had not received tools and training because of his race when he was an

---

[31]      Veal Affidavit, ¶ 13.

[32]      Veal Deposition Excerpts (Motion), at 307.  It appears Veal contacted Leleu-Eponville and
Keeling on or about September 25, 2003, approximately five weeks before Veal resigned.
One of those weeks he did not report to work and was on paid leave while the company
investigated his complaint.  There is no evidence that any of the events Veal relies on for his
harassment allegation occurred during the weeks following this complaint.  Consequently,
even assuming Schlumberger should have known of a hostile work environment, Veal has not
raised a fact issue that Schlumberger did not act promptly in taking remedial action.

[33]      Veal's Responses to Schlumberger's Second Set of Interrogatories Nos. 5 and 15, Exhibit 3
to Reply.

SST.  In sum, there is no competent summary judgment evidence that Veal informed Schlumberger of the basis of the events supporting his harassment claim based on Chambers' alleged racial slurs and threats of violence.  Nor is there any other admissible evidence that Schlumberger should have known of these events.  Consequently, Veal cannot establish a *prima facie* case of co-worker hostile work environment.   *See Celestine*, 266 F.3d at 353.

These alleged acts of harassment do not support a *prima facie* case of racial harassment under Title VII or § 1981.  Veal's specific evidence of purported harassment, the racial slurs, is not sufficiently severe to affect a term, condition, or privilege of employment such as to "[destroy] a protected classmember's opportunity to succeed in the workplace." *See Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004). Additionally, Veal has not cited to any evidence establishing that Schlumberger knew or should have known of race-based harassment perpetrated by Chambers (or any other of Veal's co-employees).  *See Celestine*, 266 F.3d at 353.

For these reasons, no genuine material fact issues exist as to Veal's hostile work environment claim.  Veal has not established a *prima facie* case of a hostile work environment. *See Celestine*, 266 F.3d at 353.  Summary judgment is warranted on this claim.

**D.   Constructive Discharge Contention**

Schlumberger also has moved for summary judgment on Veal's constructive discharge claim. Veal claims he was constructively discharged because the discrimination and harassment he suffered at the Bryan laboratory prompted his resignation.

Miguel Salinas, a Hispanic, transferred to Bryan as the facility's lab manager on July 1, 2003.  On September 8, 2003, Salinas sent an email to Veal and Chambers reprimanding both employees for failing to perform weekly maintenance in the lab.  The email also emphasized the importance of weekly maintenance.  Approximately one week later, Salinas sent another email to Veal and Chambers regarding another failure to complete weekly maintenance.  The second email emphasized the importance of weekly maintenance and indicated that the email was intended as a final warning.  Approximately one week after the second email, Salinas issued a performance warning to Veal regarding several other errors Veal made in the laboratory sometime on September 19 and September 24, 2003.  On November 4, 2003, Salinas and Justice issued both Veal and Chambers written warnings and one-week suspensions for their failure again to perform weekly maintenance.  Justice informed Veal that he would be terminated if he did not improve.  Veal left and informed Salinas that he "wasn't going to stand there and put up with any more crap."[34]  Veal never returned to work.

Under Title VII, a resignation is actionable only when the resignation amounts to constructive discharge.  *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Demonstrating constructive discharge imposes a high burden.  To carry this burden, the plaintiff "must offer evidence that the employer made the employee's working conditions so

---

[34]     Veal Deposition Excerpts (Motion), at 203.

intolerable that a reasonable employee would feel compelled to resign."  *Faruki*, 123 F.3d at 319.

Veal argues superficially in his Response that all of Schlumberger's acts of discrimination and harassment, taken together, are sufficient to prove his constructive discharge claim.  Veal does not cite specific summary judgment evidence or any legal authority in support of this contention.[35]

Schlumberger specifically questioned Veal in his deposition about his reason for resigning:

> Q.     . . . . other than the fact that Ronnie Justice told you that if you didn't improve, you would be terminated, other than that, is there anything else that supports your claim that you were forced to resign?
>
> A.     I don't have anything else, ma'am.[36]

An ultimatum requiring an employee to improve work performance or risk termination is not a sufficiently intolerable work condition to compel a reasonable employee's resignation.  *See Faruki*, 123 F.3d at 319; *see also Webb v. Southwestern Bell Tel., L.P.*, 2004 WL 2905255, at *5 (W.D. Tex. Dec. 16, 2004) ("Plaintiff's evidence of hostility, threats [of termination], and yelling by [a supervisor] . . . is not sufficient to establish that a reasonable person would have felt compelled to resign in Plaintiff's situation."); *Ginn v. Tex. Wired Music, Inc.*, 2000 WL 33348246, at *16 (W.D. Tex. Aug. 10, 2000) (allegations

---

[35]    *See* Response, ¶ 64.

[36]    Veal Deposition Excerpts (Motion), at 272.

of severe criticism and threats of termination are not sufficient to establish a constructive discharge).

Furthermore, the Fifth Circuit has articulated that "constructive discharge claims can be regarded as an aggravated case of hostile work environment." *Vallecillo v. U.S. Dept. of Housing & Urban Dev.*, 2005 WL 3115080, at *3 (5th Cir. Nov. 22, 2005).  A constructive discharge requires a greater degree of harassment than a hostile work environment claim. *Kinney Shoe Corp.*, 237 at 566 (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)).

Veal has failed to establish a hostile work environment claim, and therefore his constructive discharge claim falls as well.  *See Kinney Shoe Corp.*, 237 F.3d at 566; *see also Vallecillo*, 2005 WL 3115080, at *3 ("We agree with the district court's reasoning that because Appellant's hostile work environment claim has failed, his constructive discharge claim must also fail.").  Even considering all the evidence presented as to the warnings by Salinas, Chambers' alleged conduct, and Justice's alleged conduct, Veal fails to demonstrate a genuine issue of material fact that he suffered a constructive discharge.  Therefore, Veal's constructive discharge claim must be dismissed.

## IV.   <u>CONCLUSION AND ORDER</u>

Veal has failed to present evidence to raise a genuine issue of material fact in support of his claims that he was denied a promotion, denied training, demoted, harassed, and constructively discharged because of his race.  As a result, Schlumberger is entitled to summary judgment dismissing this case.  It is therefore

**ORDERED** that Defendants Schlumberger Limited (Schlumberger N.V.) and Schlumberger Technology Corporation's Motion for Summary Judgment [Doc. # 24] is **GRANTED**. The Court will enter a separate final judgment.

SIGNED at Houston, Texas, this **31st** day of **January 2006**.

Nancy F. Atlas
United States District Judge